UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NAKIA HOLLIS, as Special Administrator of the
ESTATE OF DIJON M. MARKS-HOLLIS,
L.M., and C.C.,

    Plaintiffs,

  v.                                        Case No. 23-CV-413

CITY OF MILWAUKEE, BRANDON
RUTHERFORD, and TRENT LITTLE,

    Defendants.

---

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

    Dijon M. Marks-Hollis died as the result of a suicide attempt while in the custody of the Milwaukee Police Department ("MPD"). Marks-Hollis' two minor children and his estate sue the City of Milwaukee and two employees of the MPD, Officer Brandon Rutherford and Sergeant Trent Little, for damages pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Am. Compl., Docket # 18.) The Defendants move for summary judgment in their favor, dismissing the Plaintiffs' complaint in its entirety. (Docket # 28.) For the reasons explained below, the defendants' motion for summary judgment is granted and the case is dismissed.

## FACTS

    Shortly before 6:00 p.m. on November 7, 2019, Marks-Hollis was arrested following a traffic stop on North 41st Street in Milwaukee. (Defs.' Proposed Findings of Fact ("DPFOF") ¶ 30, Docket # 30 and Pls.' Response to DPFOF ("Pls.' Resp.") ¶ 30, Docket #

35.) Marks-Hollis was removed from the vehicle and placed under arrest. (*Id.* ¶ 34.) He was secured and subsequently transported to District Seven in Squad 249. (*Id.* ¶ 42.) Marks-Hollis made statements and asked questions; however, he did not request medical attention, complain of any pain or injuries, report any mental health issues, or make any statements about self-harm during the traffic stop, while in custody on-scene, or during transport to District Seven. (*Id.* ¶ 43.) Squad 249 arrived at District Seven at 6:13 p.m. (*Id.* ¶ 50.) Marks-Hollis was moved from the garage holding area to the booking area. (*Id.* ¶ 52.) Officer Rutherford was the booking officer and Sgt. Little was the patrol supervisor during the relevant times on November 7, 2019. (*Id.* ¶¶ 53–54.)

Upon booking, Officer Rutherford asked Marks-Hollis a series of standard questions related to his medical needs. (*Id.* ¶ 59.) Marks-Hollis denied that he had ever attempted suicide or tried to harm himself in any way, denied that he was feeling suicidal or homicidal during booking, denied he had ever been diagnosed with a psychiatric disorder or mental health issue, and denied that he had any medical issues or concerns that officers should be aware of. (*Id.* ¶ 61.) During booking, Marks-Hollis appeared calm and cooperative and did not exhibit any outward signs of emotional distress. (*Id.* ¶ 63.) Marks-Hollis was interviewed between 6:52 p.m. and 7:25 p.m. (*id.* ¶ 65) and then returned to his cell (*id.* ¶ 66).

MPD policy calls for visual cell block checks at staggered intervals not to exceed fifteen minutes. (*Id.* ¶ 29.) Officer Rutherford checked on Marks-Hollis in his cell at 7:44 p.m., 7:58 p.m., 8:13 p.m., and 8:38 p.m. (*Id.* ¶ 71.) During the 7:44 p.m. cell check, Marks-Hollis was laying down and did not make any statements or requests. (*Id.* ¶ 73.) At the 8:13 p.m. cell check, Marks-Hollis asked for water and Officer Rutherford brought him a Styrofoam cup of water. (*Id.* ¶ 74.) When Officer Rutherford checked on Marks-Hollis at

8:13 p.m., he was laying down. (*Id.* ¶ 75.) However, when Officer Rutherford returned to check on Marks-Hollis at 8:38 p.m., he saw Marks-Hollis hanging in the corner of his cell with his socks tied around his neck. (*Id.* ¶ 77.) At 8:40 p.m. Officer Rutherford sounded the alarm and retrieved the jail keys, entered Marks-Hollis' cell, lifted him up to free him, and then laid him on his back outside his cell. (*Id.* ¶ 78.) Other officers arrived, called for an ambulance, and began life-saving measures. (*Id.* ¶ 79.) Members of the Milwaukee Fire Department arrived at 8:45 p.m. and took over Marks-Hollis' medical care. (*Id.* ¶ 80.) Marks-Hollis was removed from the cell block area at 8:59 p.m. and transported to St. Joseph's Hospital by ambulance. (*Id.* ¶ 81.)

Marks-Hollis sustained brain damage from the suicide attempt and remained hospitalized until his discharge on March 27, 2020. (Am. Compl. ¶ 26.) According to the Milwaukee County Medical Examiner's report, Marks-Hollis was found unresponsive in his home on March 29, 2020 at 11:54 p.m. and was pronounced dead on March 30, 2020 at 12:08 a.m. (Am. Compl., ¶ 28, Ex. A.) Marks-Hollis' cause of death was listed as anoxic encephalopathy and the manner of death as suicide. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary

judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Plaintiffs sue the City of Milwaukee, Officer Rutherford, and Sgt. Little under 42 U.S.C. § 1983 and the ADA. I will address each claim in turn.

1. *Procedural Issues*

Defendants allege two procedural defects with Plaintiffs' amended complaint. First, Defendants argue that the amended complaint purports to sue the City of Milwaukee Police Department, an unsuable entity under § 1983. (Defs.' Br. at 20–21, Docket # 29.) This is inaccurate. The caption does not include the MPD as a defendant, nor do the allegations regarding the parties include the MPD. (Am. Compl. ¶¶ 5–14.) Furthermore, as Defendants

4

acknowledge, the MPD cannot be sued as a separate entity from the City under § 1983. *See Birkley v. W. Milwaukee Police Dep't*, No. 22-CV-1313-PP, 2023 WL 7130035, at *3 (E.D. Wis. Oct. 30, 2023) ("[B]ecause the police department is an agency of the City of Milwaukee, it cannot be sued separately from the city."). Thus, Defendants' concerns are unfounded.

Second, Defendants argue that after Sgt. Little was added as a party in the amended complaint, he was never personally served; thus, Sgt. Little must be dismissed for lack of personal jurisdiction. (Defs.' Br. at 20–21.) Plaintiffs do not dispute that Sgt. Little was never served. (DPFOF ¶ 6 and Pls.' Resp. ¶ 6.) They state, however, that they believed "service of process of an additional summons was not necessary" because Plaintiffs' counsel assumed Defendants' counsel "would simply accept the amended complaint as the firms had a very cordial and cooperative relationship." (Pls.' Resp. ¶ 6.) Plaintiffs further argue Defendants waived this defense. (Pls.' Br. at 14.)

While Plaintiffs may have assumed that Sgt. Little was waiving service, it appears they were operating under an incorrect assumption. And "if the defendant does not waive service and if no federal statute otherwise supplies a method for serving process, then Rule 4(e)'s list of methods [for service] is exclusive." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Again, Plaintiffs do not dispute that Sgt. Little was not served. While Plaintiffs argue that Defendants "supplied an Answer to the Amended Complaint naming Defendant Little," (Pls.' Br. at 14), "the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint," *Ligas*, 549 F.3d at 500.

5

Defendants, however, raise this issue quite late in the litigation. A challenge to personal jurisdiction based on insufficient service of process is governed by Fed. R. Civ. P. 12(b)(5), which provides that the defense may be raised in a responsive pleading *or* by motion; however, a "motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Plaintiffs argue Defendants failed to plead the deficiency in their answer to the amended complaint and thus have waived the defense. (Pls.' Resp. Br. at 14.) Defendants do plead a very general, catch-all affirmative defense as follows:

> The Answering Defendants allege each and every affirmative defense contained in the Federal Rules of Civil Procedure Rule 12 to avoid any claim of waiver in the event that discovery reveals a factual basis for these defenses, and further reserve the right to assert additional affirmative defenses that may become available as a result of future discovery in this lawsuit.

(Answer, Affirmative Defenses ¶ 1, Docket # 21). I am unconvinced that this broad invocation to "every affirmative defense" in Rule 12 is sufficient to preserve Defendants' Rule 12(b)(5) defense. "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure," including setting forth a "short and plain statement" of the defense. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants' alleged affirmative defense does not cite any legal theory or facts to provide Plaintiffs notice. Thus, I do not find Defendants properly preserved the Rule 12(b)(5) defense in their responsive pleading. Although Rule 12(b)(5) defenses can also be raised by motion, the motion must come prior to filing the answer. Fed. R. Civ. P. 12(b). Summary judgment is not the proper place to raise a Rule 12(b)(5) defense. Rule 12(h)(1) provides that a party waives a Rule 12(b)(5) defense by failing to raise it by motion under the rule or including it in a responsive pleading. Fed. R. Civ. P. 12(h)(1)(B).

Having failed to properly do either, I find Defendants have waived their Rule 12(b)(5) defense as to Sgt. Little. Thus, I will address the merits of the claims against Sgt. Little.

  2.   *Failure to Provide Medical Care/Prevent Self-Harm*

The plaintiffs allege that Officer Rutherford and Sgt. Little violated Marks-Hollis' rights under § 1983 by failing to prevent self-harm and to provide medical care. (Pls.' Resp. Br. at 5–8, Docket # 34.) Specifically, as to Officer Rutherford, Plaintiffs argue that he failed to protect Marks-Hollis from self-harm by allowing more than fifteen minutes to lapse between his third and fourth cell checks, giving Marks-Hollis time to effectuate his suicide attempt. (*Id.* at 5–6.) As to Sgt. Little, Plaintiffs argue that Marks-Hollis' mother advised him of her son's mental health status, but Sgt. Little failed to inform Officer Rutherford of this information. (*Id.* at 6–8.)

"'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" *Estate of Perry v. Wenzel*, 872 F.3d 439, 453 (7th Cir. 2017) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)). Because Marks-Hollis was a pretrial detainee, the Plaintiffs' causes of action arise under the Fourth Amendment rather than the Eighth Amendment. *See id.*

The Seventh Circuit distinguishes between claims concerning a failure to provide medical care, and those pertaining to conditions of confinement. *See Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013). A failure to prevent self-harm challenges the arrestee's conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In both cases, however, the Court applies the Fourth Amendment's "objectively unreasonable" standard. *Currie*, 728 F.3d at 629. Whether the officers' actions were "objectively unreasonable under

7

the circumstances" is a less demanding standard than the Eighth Amendment's deliberate indifference standard. *Estate of Perry*, 872 F.3d at 453 (internal quotation and citation omitted). The plaintiff has the burden to provide evidence that the defendants' actions were objectively unreasonable and caused his injuries. *Jump v. Vill. of Shorewood*, 42 F.4th 782, 793 (7th Cir. 2022). This objective standard is viewed "not mechanically but in light of the totality of the facts and circumstances of each particular case." *Id.* Summary judgment is due to defendants when no rational jury could find the official's actions objectively unreasonable under the circumstances. *Id.* "And when an officer has no reason to think a detainee is suicidal, it is not objectively unreasonable to take no special precautions." *Id.*

Plaintiffs cite to the same evidence to argue the officers' actions were objectively unreasonable for both their failure to provide medical care and failure to prevent self-harm claims. As to Officer Rutherford, Plaintiffs point solely on the fact that MPD policy calls for visual cell block checks at staggered intervals not to exceed fifteen minutes and the time between Officer Rutherford's third cell check (at 8:13 p.m.) and fourth cell check (8:38 p.m.) was twenty-five minutes rather than the required fifteen. (Pls.' Resp. Br. at 6.)

Plaintiffs do not dispute, however, that Officer Rutherford had no notice that Marks-Hollis was suicidal. During booking, Marks-Hollis told Officer Rutherford that he had no prior suicide attempts or episodes of self-harm; that he did not feel suicidal; that he had never been diagnosed with a psychiatric disorder or mental health issue; and that he had no medical issues or concerns that officers should be aware of. (DPFOF ¶ 61 and Pls.' Resp. ¶ 61.) Plaintiffs do not dispute that Marks-Hollis appeared calm and cooperative during booking and exhibited no outward signs of emotional distress. (*Id.* ¶ 63.) Nor would any of Marks-Hollis' actions during Officer Rutherford's first three cell checks have alerted him

that anything was amiss. During the first and third cell check, Marks-Hollis was lying down quietly and during the second cell check, he asked for some water and Officer Rutherford provided him some. (*Id.* ¶¶ 73–75.)

While not disputing Officer Rutherford lacked notice of Marks-Hollis' suicidality, Plaintiffs argue that his violation of the MPD's timing policy for visual cell checks is sufficient to establish a Fourth Amendment violation. While a reasonable jury may consider a policy violation when considering the totality of the circumstances, a violation of a jail policy in itself is not a constitutional violation enforceable under 42 U.S.C. § 1983. *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). Rather, the "only question that matters" is whether the officer violated the Fourth Amendment. *Id.* Given the undisputed facts in this case, no reasonable jury could find that Officer Rutherford's actions were objectively unreasonable and caused Marks-Hollis' injuries.

As to Sgt. Little, Plaintiffs argue that he "bears the brunt of Plaintiffs' claims" because Marks-Hollis' mother, Nakia Hollis, advised him of her son's mental status, but he failed to take any action or alert Officer Rutherford of the information. (Pls.' Resp. Br. at 6–7.) Hollis testified that she talked to Sgt. Little and begged him to check on Marks-Hollis because he "was not in the right state of mind." (Declaration of Clint Muche ("Muche Dec.") ¶ 21, Ex. 11, Deposition of Nakia Hollis ("Hollis Dep.") at 16, Docket # 32-11.) Hollis testified that she told Sgt. Little that Marks-Hollis had said earlier that he "didn't want to be there anymore." (*Id.* at 38.) She testified that she "started to cry" because she "knew about his state of mind already" and asked if Sgt. Little could "please go check" on her son. (*Id.* at 17.) Hollis testified that Sgt. Little assured her that he would. (*Id.*)

9

For his part, Sgt. Little averred that he was called to the booking area to count money taken from Marks-Hollis. (Declaration of Trent Little ("Little Decl.") ¶ 5, Docket # 37.) He observed Marks-Hollis sitting in a chair in the booking area, that Mark-Hollis appeared calm, and that their interaction was unremarkable. (*Id.* ¶ 6.) He further avers that at some point, Hollis came to the counter asking what had happened to the car that Mark-Hollis was driving when he was arrested. (*Id.* ¶ 7.) Sgt. Little avers that he does not recall any conversation with Hollis other than about the car. (*Id.* ¶ 8.)

Even viewing the facts in a light most favorable to Plaintiffs, as I must, Plaintiffs fail to establish that Sgt. Little's actions caused Marks-Hollis' injuries. *See Jump*, 42 F.4th at 793 (stating that "the nonmoving plaintiff has the burden to provide evidence that the defendants' actions were objectively unreasonable *and* caused his injuries") (emphasis added). Even if Sgt. Little had communicated to Officer Rutherford Hollis' statements that Marks-Hollis was "not in the right state of mind" and that he had stated, at some point, that he "didn't want to be there anymore," Officer Rutherford personally interacted with Marks-Hollis, who denied feeling suicidal, denied having mental health issues, and appeared calm and cooperative. It would be reasonable for Officer Rutherford to rely on his own observations and Marks-Hollis' own statements rather than Hollis' vague statements regarding her son's mental state. *See Pulera*, 966 F.3d at 555 ("When confronted with a healthy patient who mentioned no problems and an outside caller saying the patient was distraught, a reasonable nurse could believe her own observations over the phone call."). For these reasons, even assuming that it was unreasonable for Sgt. Little not to convey Hollis' statements to Officer Rutherford, no reasonable jury could find that Sgt. Little's actions caused Marks-Hollis' injuries.

Plaintiffs also request damages for loss of society and companionship for Marks-Hollis' two minor children. (Am. Compl. ¶ 2.) Because I conclude that the Defendants did not violate Marks-Hollis' civil rights, the Plaintiffs' loss of society and companionship claim on behalf of Marks-Hollis' minor children necessarily fails. *See Est. of Fiebrink by Cade v. Armor Corr. Health Servs., Inc.*, No. 18-CV-832, 2019 WL 1980625, at *11 (E.D. Wis. May 3, 2019).

Plaintiffs' claims against Officer Rutherford and Sgt. Little under § 1983 are dismissed. Defendants also argue that they are entitled to qualified immunity. Because I grant summary judgment on the merits, I do not need to address the qualified immunity argument.

    3.    *Monell Claim Against the City of Milwaukee*

Plaintiffs also sue the City of Milwaukee under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging the constitutional violations were part of a pattern, practice, or policy by the City. (Am. Compl. ¶¶ 29–34.) Having found no reasonable jury could find that Officer Rutherford and Sgt. Little violated Marks-Hollis' constitutional rights, Plaintiffs cannot maintain their claim under *Monell*. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations.").

Furthermore, Plaintiffs provided no evidence in support of their *Monell* claim. (Pls.' Br. at 13.) Even as the nonmovant, as the party with the ultimate burden of proof at trial, Plaintiffs retain the burden of producing evidence which would support a reasonable jury

11

verdict. *See Celotex Corp.*, 477 U.S. at 324. Plaintiffs fail to do so. For these reasons, summary judgment is granted in favor of Defendants on Plaintiffs' *Monell* claim.

  4.  *ADA Discrimination Claim*

  Finally, Plaintiffs raise a claim against the City of Milwaukee under the ADA. Plaintiffs allege that the City violated the ADA by not attending to Marks-Hollis' mental health issues, thereby intentionally discriminating against him because of his mental disability. (Am. Compl. ¶ 38.) The ADA prohibits disability-based discrimination in the provision of public services, programs, and activities. *Moore v. W. Illinois Corr. Ctr.*, 89 F.4th 582, 594 (7th Cir. 2023). To succeed on a claim for discrimination under Title II of the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was by reason of his disability. *Id.*

  As with the *Monell* claim above, Plaintiffs have put forth no evidence in support of their ADA claim. The totality of Plaintiffs' argument on this claim is that Marks-Hollis received Social Security Income as a child and was again granted benefits as an adult. (Pls.' Br. at 12–13.) Plaintiffs then state that Marks-Hollis was "mentally disabled enough that the Social Security Administration deemed him worthy of income." (*Id.* at 13.) It is entirely unclear what Plaintiffs are arguing in this paragraph. The ADA and Social Security Act are entirely different statutes, serving different purposes, and with their own criteria for establishing disability. On this record, no reasonable jury could find the City violated the ADA. Summary judgment is granted in favor of Defendants on Plaintiffs' ADA claim.

## CONCLUSION

Dijon Marks-Hollis was 21 years old at the time of his death as the result of a suicide attempt while in police custody. This is indisputably tragic, and nothing in this decision is intended to minimize the tragic loss of his life. However, on the undisputed facts in this record, I find that no rational trier of fact could find in Plaintiffs' favor as to their 42 U.S.C. § 1983 and ADA claims against Defendants. As such, summary judgment is granted in favor of Defendants. Plaintiffs' complaint is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 28) is **GRANTED**. Plaintiffs' complaint is dismissed.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of December, 2024.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge